UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA            )
                                    )
v.                                  )       No. 3:03-1177
                                    )       JUDGE CAMPBELL
ROBERT LASSETER, individually and   )
doing business as CompuChild, USA, Inc.   )

MEMORANDUM

I. Introduction

Pending before the Court is the United States' Motion For Summary Judgment (Docket

No. 33), as well as a proposed Final Judgment And Order For Civil Penalties, Injunction, And

Other Equitable Relief, which is attached to the Motion.  The Defendant, appearing pro se, has

filed a Response to the Motion (Docket No. 40).

For the reasons set forth below, the Motion is GRANTED.   The Government is directed

to submit a proposed final judgment, on or before July 15, 2005, reflecting the conclusions

reached in this Memorandum and accompanying Order.

II. Factual and Procedural Background

Plaintiff United States, on behalf of the Federal Trade Commission, brought this action

under the Federal Trade Commission Act, 15 U.S.C. §§ 45, et seq., against Defendant Robert

Lasseter as the owner and President of CompuChild Services of America, Inc., and doing

business as CompuChild USA, Inc. from 1994 through March 5, 2001. (Complaint, Docket No.

1).  The Government alleges that during that time, the Defendant "offered for sale and sold what

he described as a 'complete turnkey business package,' that would provide everything needed for

investors to offer CompuChild USA's Early-Age Preschool Computer Training Program in child

care centers throughout the United States." (<u>Id.</u>, at ¶ 6).  Approximately 70 individuals allegedly

purchased the package for $9,900 to $12,500 each. (<u>Id.</u>).  The Government alleges that the

Defendant violated certain disclosure requirements of the Franchise Rule, 16 C.F.R. §§ 436.1-

436.3, in his offers to purchasers, and seeks relief under various provisions of the Act. (<u>Id.</u>)

By Order entered October 13, 2004 (Docket No. 30), this Court approved the Magistrate

Judge's Report and Recommendation, and granted Defendant's Motion To Dismiss claims

arising under 15 U.S.C. § 57b, the grounds for which occurred prior to December 10, 2000.

Specifically, the Magistrate Judge determined that the three-year statute of limitations set forth

in Section 57b(d) barred the Government's claims under Section 57b for conduct occurring

outside the limitations period. (Docket No. 28).

Remaining to be resolved, as pointed out by the Magistrate Judge, are the Government's

claims under Section 57b, the grounds for which occurred after December 10, 2000, as well as its

claims under 15 U.S.C. §§ 45 and 53. (Docket No. 28).  The pending Motion For Summary

Judgment relates to those claims.

### III.  <u>Analysis</u>

A. <u>The Standards for Considering Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may

be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."   Fed.R.Civ.P. 56(c); <u>Meyers</u>

<u>v. Columbia/HCA Healthcare Corp.</u>, 341 F.3d 461, 466 (6th Cir. 2003).

In order to prevail, the movant has the burden of proving the absence of a genuine issue

2

of material fact as to an essential element of the opposing party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the movant has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

In order to defeat the motion, the nonmoving party is required to show, after an adequate time for discovery, that there is a genuine issue of fact as to every essential element of that party's case upon which he will bear the burden of proof at trial. Celotex Corp., 106 S.Ct. at 2553; Meyers, 341 F.3d at 466. To create a genuine factual issue, the nonmoving party must show "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Although the nonmovant need not show that the disputed issue should be resolved in his favor, he must demonstrate that there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. See also Hopson, 306 F.3d at 432.

A preponderance of the evidence standard is used in this determination. Id. Therefore, if the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," the motion for summary judgment may be granted. Id. See also Matsushita Electric, 106 S.Ct. at 1356.

B. Violations of the FTC Act

The Government contends in its Motion that the Defendant has violated the FTC Act

Case 3:03-cv-01177   Document 42   Filed 06/30/05   Page 3 of 12 PageID #: 3

through violation of various provisions of the Franchise Rule, 16 C.F.R. §§ 436.1 - 436.3. First, the Government contends that the Defendant failed to provide required disclosure documents to any prospective purchaser. Subsection (a) of Section 436 provides that it is an unfair or deceptive act or practice under the FTC Act for a franchisor to "fail to furnish any prospective franchisee with the following information accurately, clearly, and concisely stated, in a legible, written document at the earlier of the 'time for making of disclosures' or the first 'personal meeting'. . ." 16 C.F.R. § 436.1(a). Subsection (a) then lists over 20 categories of information that must be disclosed. The "time for making disclosures" is defined as ten business days prior to the earlier of the execution of the franchise agreement, or before any payment is made. 16 C.F.R. § 436.2(g).

Additional disclosures are required by Subsections (b) through (e), which provide that it is an unfair or deceptive act or practice for a franchisor to make earnings claims to the prospective franchisee unless the franchisor makes available material that substantiates those claims at the "time for making disclosures." 16 C.F.R. § 436.1(b)-(e).

The evidence offered by the Government in Attachment A supports the Government's allegation that the Defendant violated these disclosure provisions, and in his Response to the Motion For Summary Judgment (Docket No. 40), the Defendant does not dispute that he failed to make the required disclosures. He argues, instead, that CompuChild was not required to comply with the Franchise Rule because it was "a business opportunity" and not a franchise within the meaning of the Rule. Defendant contends that CompuChild was not a franchise because it did not collect royalties, did not involve reporting requirements, and there was no oversight or required methods of operation.

4

The Franchise Rule defines the term franchise as a continuing commercial relationship in which: (1) a person (the franchisee) "offers , sells or distributes . . .  goods, commodities, or services" that are identified by a "trademark, service mark, trade name, advertising or other commercial symbol designating another person" (the franchisor); (2) the franchisor "gives significant assistance to the franchisee in the latter's method of operation, including . . . the franchisee's business organization, management, marketing plan, promotional activities or business affairs;" and (3) the franchisee is required as a condition of obtaining or commencing the franchise operation to make a payment or a commitment to pay to the franchisor a total of over $500.  16 C.F.R. § 436.2(a).

The evidence filed by the Government indicates that the purchasing agreement (titled "License Agreement") used by the Defendant requires purchasers ("licensees") to actively promote and sell "CompuChild services" and to build up and enlarge interest in the "CompuChild Program." (Attachment A, Exhibit 1 at 21, attached to Docket No. 33).  The company's sales materials state that buyers "will have the exclusive rights to own and operate the CompuChild program. . ." (Exhibit 3 at 1).  The Court concludes that this evidence satisfies the first requirement that the services offered by the purported franchisor be identified by a unique trade name.

As for the second element, Defendant's sale materials state that buyers "own their business but receive continuous support and assistance from the National office," and that "[m]aterials and supplies necessary to operate the business are available from the National Office." (Exhibit 1, at 11).  Buyers are also told that they will receive three days of training at their residence. (Id.; Exhibit 4, at 7).  Other materials state that "Bob put together a complete

5

turnkey business package offering everything from a multimedia-computer to business cards. 'By providing everything necessary for an individual to run their own CompuChild business I can have a new Program Director fully operational in less than one week after their three day on-sight (sic) training program'" (Exhibit 1, at 17). This evidence satisfies the second requirement that the purported franchisor "gives significant assistance to the franchisee in the latter's method of operation. . . "

Various license agreements and sales materials used by the Defendant indicate that the cost of becoming a "licensee" during the life of the business ranged from approximately $9,900 to $12,500. (Exhibit 1, at 11, 17; Exhibit 4 at 7). "Licensees" were also asked to pay a monthly license fee of $195. (Exhibit 1, at 11, 23). This evidence satisfies the third requirement that the franchisee be required to pay over $500 for the franchise.

Therefore, having satisfied the definition of "franchise" within the meaning of the Franchise Rule, Defendant was required to comply with its disclosure provisions.

Although the Defendant concedes that he did not provide the required disclosures, he contends that he did not intend to mislead or deceive franchisees, and argues that less than 2% of the franchisees complained to the FTC. As the Tenth Circuit recently pointed out, however, intent is not required to establish a violation of the FTC Act:

> Because the primary purpose of § 5 [15 U.S.C. § 45] is to protect the consumer public rather than to punish the wrongdoer, the intent to deceive the consumer is not an element of a § 5 violation. See Federal Trade Comm'n v. Amy Travel Serv., Inc., 875 F.2d 564, 573 (7th Cir.1989); United States v. Johnson, 541 F.2d 710, 712 (8th Cir.1976).

F.T.C. v. Freecom Communications, Inc., 401 F.3d 1192, 1202 (10th Cir. 2005). See also F.T.C. v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988). In addition, failure

by consumer victims to file a complaint with the FTC does not indicate that the Defendant has complied with the Act. See, e.g., F.T.C. v. Amy Travel Service, Inc., 875 F.2d at 572 ("Contrary to defendants' claims, the FTC need not prove that every consumer was injured. The existence of some satisfied customers does not constitute a defense under the FTCA. . . . [T]he existence of those [satisfied] customers is not relevant to determining whether consumers were deceived . . .") Thus, the Court concludes that Defendant's arguments are without merit, and do not preclude liability for his failure to comply with the FTC Act.

As the Government has established liability in this case, the Court enters summary judgment as to liability in favor of the Government.

C. Remedies

There are various remedies set forth in 15 U.S.C. §§ 45 and 53 for violations of the FTC Act. Specifically, for violations of the Franchise Rule, Section 45(m)(1)[1] permits the

---

[1] 15 U.S.C. § 45(m)(1)(A) provides as follows:

(m) Civil actions for recovery of penalties for knowing violations of rules and cease and desist orders respecting unfair or deceptive acts or practices; jurisdiction; maximum amount of penalties; continuing violations; de novo determinations; compromise or settlement procedure

**(1)(A)** The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this chapter respecting unfair or deceptive acts or practices (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1) of this section) with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule. In such action, such person, partnership, or

7

Government to recover civil penalties of up to $10,000 per violation committed "with actual

knowledge or knowledge fairly implied on the basis of objective circumstances that such act is

unfair or deceptive and is prohibited by such rule." Through enactment of legislation adjusting

civil penalties for inflation, the $10,000 ceiling has been raised to $11,000. <u>See</u> 16 C.F.R. §

1.98(d); 28 U.S.C. § 2461; the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub.L.

101- 410.

Section 53(b)[2] provides for injunctive relief, which has been held to include "the full

_____

corporation shall be liable for a civil penalty of not more than
$10,000 for each violation.

[2]  15 U.S.C. § 53(b) provides in part as follows:

  (b) Temporary restraining orders; preliminary injunctions

    Whenever the Commission has reason to believe--

      **(1)** that any person, partnership, or corporation is violating, or is
      about to violate, any provision of law enforced by the Federal
      Trade Commission, and

      **(2)** that the enjoining thereof pending the issuance of a complaint
      by the Commission and until such complaint is dismissed by the
      Commission or set aside by the court on review, or until the order
      of the Commission made thereon has become final, would be in the
      interest of the public--

      the Commission by any of its attorneys designated by it for such
      purpose may bring suit in a district court of the United States to
      enjoin any such act or practice. Upon a proper showing that,
      weighing the equities and considering the Commission's likelihood
      of ultimate success, such action would be in the public interest,
      and after notice to the defendant, a temporary restraining order or a
      preliminary injunction may be granted without bond: _Provided,_
      _however_, That if a complaint is not filed within such period (not

8

range of equitable remedies traditionally available" to the district court. See, e.g., F.T.C. v. Southwest Sunsites, Inc., 665 F.2d 711, 718 (5th Cir. 1982).  See also F.T.C. v. Amy Travel Service, Inc., 875 F.2d at 571.

In a proposed judgment filed with the Court, the Government proposes several items of injunctive relief, as well as $616,000 in civil penalties (representing 56 violations times $11,000).

The Defendant objects to the injunctive relief because he construes it as preventing him from conducting future franchise operations.  The relief proposed by the Government, however, does not preclude the Defendant from operating a franchise business.  Instead, it requires that he make the disclosures required by the Franchise Rule, and otherwise comply with certain injunctive relief designed to ensure that he complies with the Rule.   The Court concludes that this is a proper case for permanent injunctive relief under Section 53(b), and that the injunctive relief set forth in the proposed judgment is necessary and appropriate.

As for civil penalties, the Court concludes that an award of civil penalties is appropriate under Section 45(m)(1)(A) because the Government has shown that the violations were committed "with knowledge fairly implied on the basis of objective circumstances" that the

_____

exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further*, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. . .

Case 3:03-cv-01177   Document 42   Filed 06/30/05   Page 9 of 12 PageID #: 9

failure to make the appropriate disclosures was prohibited by the Franchise Rule, and constituted an unfair or deceptive act or practice.  The Government points out that the FTC contacted the Defendant in November, 2000 regarding potential Franchise Rule violations, and the Defendant denied that he was required to comply with the Rule. (Exhibit 1, at 2-3; Exhibit 5).  After selling the CompuChild business in March, 2001, the Defendant began operating SmartStart, a business offering the same services. (Exhibit C; Exhibit 7).  The materials filed by the Government regarding the SmartStart business evidence a similar failure to make required disclosures.  (Id.) There is no evidence that the Defendant was diligent in seeking legal advice to support his claim that he was not required to comply with the Franchise Rule.  Indeed, in response to the Government's Motion, as pointed out above, the Defendant continues to deny that he is required to comply with the Rule.  Thus, an award of civil penalties is warranted in this case.

Section 45(m)(1)(C) provides that in determining the amount of civil penalties, "the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require."  See also United States v. National Financial Services, Inc., 98 F.3d 131, 140 (4th Cir. 1996)(The court considered the following factors in assessing a civil penalty: (1) the good or bad faith of the defendants, (2) the injury to the public, (3) the defendants' ability to pay, (4) the benefits derived from the violations, and (5) the necessity of vindicating the authority of the FTC.)

As for the Defendant's degree of culpability, the Court concludes that this factor weighs in favor of the Government for the reasons set forth above regarding the appropriateness of an award of civil penalties.

The second factor, history of prior such conduct, weighs in favor of the Defendant as

10

there is no evidence of Franchise Rule violations prior to Defendant's operation of CompuChild.

As for his ability to pay, and the effect of civil penalties on his ability to continue to do business, the Defendant points out that he cannot afford to pay civil penalties because he is currently in Chapter 7 Bankruptcy.[3]  On the other hand, the Government contends that the Defendant received a significant benefit from the sale of the CompuChild franchise, and that imposition of civil penalties will not affect his ability to operate CompuChild because he no longer owns the business.

As for other considerations, the Defendant points out that there is little or no consumer loss in this case, and that the delay in bringing suit indicates that his conduct was not considered to be serious by the Government.

Having considered all these factors, the Court concludes that the appropriate amount of civil penalties in this case is $56,000.00. ($1,000 times 56 – the number of violations that occurred after December 10, 1998, which is within the five year limitations period.)

The Government is directed to submit a proposed final judgment, on or before July 15, 2005, reflecting the conclusions reached in this Memorandum and accompanying Order.

## IV. Conclusion

For the reasons set forth above, the Government's Motion For Summary Judgment is granted.  The Government is directed to submit a proposed final judgment, on or before July 15, 2005, reflecting the conclusions reached in this Memorandum and accompanying Order.

---

[3]  Because penalties payable to the government are not dischargeable in Chapter 7 bankruptcy, Defendant is not likely to be able to avoid payment of any civil penalties imposed by the Court in this action. See 11 U.S.C. § 523(a)(7).

11

It is so ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

12